TYRESHIA VONSHANTA
BROWN,

        **Plaintiff,**

v.                                              Case No.   6:20-cv-840-GJK

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

___

## MEMORANDUM OF DECISION[1]

Tyreshia Brown (the "Claimant"), appeals a final decision of the Commissioner of Social Security (the "Commissioner"), denying her claim for Social Security Disability Benefits. Doc. Nos. 1, 31. Claimant filed her application for benefits on October 16, 2018. R. 10. Claimant alleges a disability onset date of June 30, 2016. R. 10. Claimant argues that the Administrative Law Judge (the "ALJ") erred in: 1) failing to properly consider all medical source opinions; 2) finding ARNP Patricia Burgunder's mental capacity source statement unpersuasive; 3) failing to properly assess Claimant's subjective complaints of pain; and 4) failing to properly account for all of Claimant's limitations in her residual functional capacity ("RFC"). Doc. No. 31 at 14, 29, and 34. Upon

---

[1] Magistrate Judge David A. Baker substituting for Magistrate Judge Gregory J. Kelly.

consideration of the parties' arguments and the record, the final decision of the Commissioner is **REVERSED and REMANDED.**

I. STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II. ANALYSIS.

The ALJ found that Claimant had the following severe impairments: spine disorder, obesity, affective disorder, and post-traumatic stress disorder ("PTSD"). R. 12. The ALJ found that despite these impairments Claimant could perform medium work except that Claimant:

> Could perform work which requires up to 30 days to learn the techniques, acquire the information, and develop the facility for average performance in a specific job situation. She could lift or carry 25 pounds frequently, and 50 pounds occasionally (from very little, up to 1/3 of an 8-hour workday). She could stand and/or walk for a total of 6 hours and sit for a total of 6 hours (with normal breaks) in an 8-hour workday. Due to mild to moderate pain and medication side effects, she should avoid hazards in the workplace such as unprotected areas of moving machinery; heights; ramps; ladders; scaffolding; and on the ground, unprotected areas of holes and pits. She should be restricted to occasional vibration. She could perform each of the following postural activities frequently: balancing, stopping, crouching, kneeling, and crawling; but not [t]he climbing of ropes or scaffolds, and of ladders exceeding 6 feet. She has non-exertional mental limitations which frequently affect her ability to concentrate upon complex or detailed tasks, but she would remain capable of understanding, remembering, and carrying out the job instructions defined earlier; making work related judgments and decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. She should avoid stressful situation[s] and can only occasionally work with coworkers in a team; work directly with the public; work with supervisor or co-workers where interpersonal

> interaction or discussion is require[d]; make decisions; and use judgment.

R. 15-16.

On July 6, 2016, Dr. Jacques Minville, a psychiatrist, saw Claimant at Behavioral Support Services, Inc. ("BSS") and diagnosed her with PTSD, anxiety disorder, and major depressive disorder.[2] R. 331. Dr. Minville observed Claimant had: tense posture, avoidant eye contact, anxious mood, racing thoughts with "poverty of content," and depressive thoughts. R. 328-29. He noted that Claimant was cooperative, emotional, had crying spells, and was nervous. R. 330. Thereafter, Claimant began treatment at BSS for her depression, PTSD, and anxiety. R. 332, 336-41.

On October 20, 2016, Dr. Minville completed a "Certification for Health Care Provider for FMLA Leave & Behavioral Health Provider Statement of Claim for Disability Benefits." R. 332-35. Dr. Minville noted a primary diagnosis of generalized anxiety and a secondary diagnosis of major depressive disorder. R. 333. With respect to her cognitive function, Dr. Minville opined Claimant would be able to apply focus and concentration for periods of 15-30 minutes. R. 333.

On June 27, 2017, Dr. Brenda White, also a provider at BSS, provided another psychiatric evaluation for Claimant's disability benefits. R. 395-397. Dr. White

---

[2] Claimant's PTSD and depression originate from the murder of her son, who died in front of her, in the family's front yard in late 2015. R. 333, 398.

opined that Claimant had marked impairment related to adaptation to stress and social functioning, and moderate impairment in concentration. R. 396. With respect to Claimant's ability to adapt to stress, Dr. White noted Claimant was hypervigilant, had intrusive memories, frequent crying spells, and high levels of anxiety. R. 396. Dr. White noted that Claimant was socially withdrawn and avoided crowds. R. 396. Dr. White noted Claimant was easily distracted due to high anxiety, frequent crying spells. R. 396. In response to the question "what are specific mental health limitations or restrictions that would preclude the claimant from working," Dr. White responded that Claimant had panic attacks 2 to 3 times a day, frequent crying spells, high levels of anxiety, poor concentration, intrusive memories of her son's murder distracting her, and flashbacks hearing gunshots. R. 396.

On July 19, 2019, Nurse Practitioner Patricia Burgunder completed a mental capacity source statement. R. 770-72. In the section on sustained concentration and persistence, Burgunder observed Claimant had marked limitations in: the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday without interruptions from psychologically based symptoms, the ability to complete a normal workweek without interruptions from psychologically based symptoms, and the ability to perform at a consistent pace with a one hour lunch

break and two 15 minutes rest periods.   R. 770.   Burgunder opined Claimant had moderate limitations in: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary limits, with respect to interaction the ability to interact appropriately with the general public; and with respect to adaptation, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans.   R. 771.   Burgunder indicates that her opinion was based on direct observation/treatment, historical medical records, patient report, her own experience, psychological/psychiatric evaluations, counseling/therapy records.   R. 772.

In 2017, the Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revisions redefined terms related to evidence; revised how the agency considers medical opinions and prior administrative medical findings; and revised rules about treating sources, acceptable medical sources, and medical and psychological consultants. *Id.; see* 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. The final rules became effective on March 27, 2017.   *Id.*   Because Claimant filed her claim after March 27, 2017, the new regulations apply in this case.   20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c.

Under the new rules, an ALJ must apply the same factors in the

consideration of the opinions from all medical sources and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). "The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. § 404.1520c(b) . . . ." *Swingle v. Comm'r of the SSA*, No. 6:20-cv-365, 2020 U.S. Dist. LEXIS 213488, at *4 (M.D. Fla. Nov. 6, 2020) (internal quotation marks omitted). A "medical opinion" is defined as "'a statement from a medical source about what [the claimant] can still do despite [his/her] impairment(s)' and whether the claimant has any functional limitations or restrictions regarding certain enumerated abilities." *Wood v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 118743, at *16 (M.D. Fla. June 25, 2021) (quoting 20 C.F.R. § 404.1513(a)(2)). A medical opinion does not include judgments about the nature and severity of the impairments, medical history, clinical findings, diagnosis, treatment or prognosis. *Id.* (citing § 404.1513(a)(3)).

With respect to medical opinions, the ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" in assessing an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). Despite the substantive changes in the regulations, the current version still instructs an ALJ to weigh all medical opinions

in light of the length, purpose and extent of the treatment relationship and frequency of examinations which continues to "indicate the importance of treating physicians' opinions – especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Simon v. Commissioner of Soc. Sec.*, No. 19-14682, 2021 U.S. App. LEXIS 17098, at *21 n. 4 (11th Cir. June 9, 2021).

Supportability and consistency constitute the most important factors in any evaluation of a medical opinion, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2); *see Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 U.S. Dist. LEXIS 77456, at *6 (M.D. Fla. Apr. 6, 2021) ("Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the

record."). The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

With respect to Claimant's mental status, the ALJ did not address Dr. Minville or Dr. White's opinions, found Nurse Practitioner Burgunder's opinion unpersuasive, and relied instead on the opinions of two state agency psychological consultants, Dr. Buffone and Dr. Willens. R. 20-21. The Commissioner argues that Dr. Minville and Dr. White only offered opinions on issues reserved to the Commissioner. Doc. No. 31 at 22. Thus, the Commissioner suggests that the ALJ did not have to consider Dr. Minville's and Dr. White's opinions. *Id.* The Commissioner argues that Dr. Minville's statements that Claimant was incapacitated due to her anxiety and that her applied focus and concentration was limited to 15-30 minutes, were not opinions because he did not say she would be functionally limited in a work environment as a result of these limitations. Doc. No. 31 at 22.

The Commissioner's argument regarding Dr. Minville's opinions amounts to nothing more than a *post hoc* rationalization for the ALJ's failure to address the opinions. The Commissioner provides no support for his argument that Dr. White's opinions were ultimate findings reserved for the Commissioner. Doc.

No. 31 at 22-23. Thus, the Court will not affirm the ALJ's decision on this basis. *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011).

To the extent that Dr. Minville and Dr. White opined on Claimant's cognitive functional limitations, the ALJ must consider those opinions, assess their persuasiveness, and *explain* his decision, particularly with respect to supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515, 2020 U.S. Dist. LEXIS 72260, at *14 (M.D. Fla. Apr. 8, 2020) ("As an initial matter, the new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous."), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020); *see also Michael v. Saul*, No. 2:20cv238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) ("the ALJ cannot merely summarize the evidence, as a whole, and then conclude that [medical] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [the medical] opinions and why." (citing *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014))); *Brandy T. v. Comm'r of Soc. Sec. Admin.*, No. 1:20-cv-2994, 2021 WL 1851378, at *14 (D.S.C. May 10, 2021) (ALJ reversibly erred in conclusory rejection of physician opinion for failure to adequately address supportability and consistency factors as required by new regulations).

The new regulations require an ALJ to articulate the persuasiveness of all medical opinions in the case record. 20 C.F.R. § 404.1520c(b); *Swingle v. Comm'r of the SSA*, No. 6:20-cv-365, 2020 U.S. Dist. LEXIS 213488, at *4 (M.D. Fla. Nov. 6, 2020). The ALJ failed to do so in this instance. As such, this deficiency requires reversal and remand.[3]

Accordingly, it is **ORDERED** that:

1. This matter is **REVERSED and REMANDED** to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g);

2. The Clerk is directed to enter a final judgment in favor of the Claimant; and

3. The Clerk is directed to close the case.

**DONE** in Orlando, Florida, on July 12, 2021.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[3] Because this matter will be remanded, the Court will not address the remaining errors ascribed to the ALJ's decision. The ALJ will have to reweigh the evidence upon remand and may reconsider the issues raised by Claimant. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).

Copies furnished to:

Bartholomew C. Zadel
Morgan & Morgan
988 Woodcock Road
Orlando, Florida 32803

Maria Chapa Lopez
United States Attorney
John F. Rudy, III
Assistant United States Attorney
400 N. Tampa St.
Suite 3200
Tampa, Florida 33602

Christopher G. Harris, Chief Counsel, Region IV
John C. Stoner, Deputy Regional Chief Counsel
Megan E. Gideon, Branch Chief
Sarah Choi, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable James Satterwhite
Administrative Law Judge
Office of Hearing Operations
4300 Goodfellow Boulevard
St. Louis, Missouri 63120-1700